**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DR. CHRISTOPHER MURDOCK,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-26-1281** |
| **THE JOHNS HOPKINS UNIVERSITY, et al.** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * * *

# MEMORANDUM

Two motions are now pending. Defendants The Johns Hopkins University ("JHU"), The Johns Hopkins Health System Corporation ("JHHSC"), Dr. Jessica Bienstock, Dr. James Ficke, Dr. Dawn LaPorte, and Dr. Adam Levin filed a Partial Motion to Dismiss Plaintiff Dr. Christopher Murdock's Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.) Murdock then filed a Motion to Commence Discovery and for Entry of a Scheduling Order, arguing that Defendants' Partial Motion to Dismiss does not preclude discovery on his claims against the four individual doctor defendants. (ECF No. 19.) The Court will grant Defendants' Partial Motion to Dismiss and deny Murdock's motion as moot because, with Defendants' motion resolved, discovery will now be scheduled to proceed in the ordinary course.

## I. FACTUAL BACKGROUND

Plaintiff Dr. Christopher Murdock is a Black physician who joined JHU's orthopedic surgery residency program in 2022, after graduating from medical school. (ECF No. 1 at ¶ 9.) Defendant JHU is a private medical institution that operates a graduate physician residency program under the corporate umbrella of Defendant JHHSC. (*Id.* at ¶¶ 10–11.)

Murdock alleges that, upon starting at JHU, he was warned by other Black doctors that he would experience racial discrimination. (*Id.* at ¶¶ 18–19, 23–26.) And he provides examples of "racially tinged" encounters with Defendants Dr. Levin and Dr. Shariq. (*Id.* at ¶¶ 20–22). Murdock claims that Dr. Levin belittled him because of his race and submitted evaluations of Murdock that were "uniformly negative, unsupported by evidence, and in two instances submitted without any contemporaneous professional contact with [Murdock]," suggesting a "racially motivated effort" to discredit him. (*Id.* at ¶ 33.) These evaluations stood in stark contrast to other evaluations that consistently "praised [Murdock's] work." (*Id.* at ¶¶ 34, 46–49.)

Although "[p]rogram and departmental leadership knew about the racial environment in the orthopedic residency program," they did nothing to remedy it, and another Black doctor told Murdock that "JHU was attempting to push him out." (*Id.* at ¶¶ 41–44.) In response, Murdock met with Defendant Dr. LaPorte, the director of his residency program, and reported the "ways in which he, and his fellow Black residents, were being treated more harshly than the non-Black residents." (*Id.* at ¶¶ 51–52.) Within days of that "protected complaint," Murdock allegedly started to receive a flood of unexpected negative reports and evaluations that led to his being placed on probation and into a remedial educational pathway for the next program year, actions that he concluded were "consistent with a coordinated retaliatory response." (*Id.* at ¶¶ 53–64.)

Ultimately, Murdock claims that JHU's retaliatory efforts culminated in his termination from the program on January 10, 2025. (*Id.* at ¶ 69.) Murdock was fired following an investigation in which he was accused of "touch[ing] two women over their clothes and ma[king] an offensive comment to a third." (*Id.* at ¶ 67.) Murdock, however, disputes these sexual misconduct allegations and calls them a mere pretext for the true reason he was fired: "the permanent removal of a Black physician who had complained about racial bias in the program." (*Id.* at ¶ 72.)

Finally, following his termination, Murdock claims that unspecified Defendants impeded his ability to transfer to other programs by communicating to others about his sexual misconduct investigation. (*Id.* at ¶ 74.) And that JHU and JHHSC made "active," but again unspecified, attempts to dissuade potential witnesses with knowledge of his relevant claims from speaking to Murdock's counsel or otherwise assisting with Murdock's claims. (*Id.* at ¶¶ 75–76.)

From these events, Murdock brings six counts: Count I for Racial Discrimination under Title VII against JHU and JHHSC; Count II for Retaliation under Title VII against JHU and JHHSC; Count III for Racial Discrimination in Contracting under 42 U.S.C. § 1981 against all Defendants; Count IV for Retaliation under 42 U.S.C. § 1981 against all Defendants; Count V for Racial Discrimination under Maryland's Fair Employment Practices Act ("FEPA") against JHU and JHHSC; and Count VI for Retaliation under FEPA against JHU and JHHSC. In this Partial Motion to Dismiss, Defendants move to dismiss Counts I, II, V, and VI—that is, all claims under Title VII and FEPA against JHU and JHHSC. (*See generally* ECF No. 10.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. This motion is designed "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). But a court may nevertheless rule on an affirmative defense on a motion to dismiss if "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (citation, internal quotation marks, and emphasis omitted).

When considering a motion to dismiss, the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678–79. Nor do "'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Generally, the Court's review under Rule 12(b)(6) is limited to the allegations in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). But the Court may also take judicial notice of matters of public record. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). "[I]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Wooten v. Univ. of Maryland, Balt.*, 733 F. Supp. 3d 402, 416 (D. Md. 2024) (citation omitted). The Court takes judicial notice of Murdock's EEOC charge that Defendants appended to their Motion to Dismiss. (ECF No. 10-2.)

## III. DISCUSSION

Defendants argue that Murdock did not fulfill his exhaustion requirements for his Title VII and FEPA claims against JHU and JHHSC. Specifically, they argue that Murdock filed his charge with the EEOC more than 300 days after he was fired by JHU, so his application was not timely and associated claims are time-barred. Defendants are correct, and the Court will grant the motion.

**A. Murdock's EEOC charge was not timely.**

Before coming to federal court, a claimant under Title VII must first file any charges regarding unlawful employment practices with the EEOC. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 544 (2019) (citing 42 U.S.C. § 2000e-5(b), (e)(1)). This claim-processing rule is a "mandatory" prerequisite to filing a civil action. *Id.* at 543–44. "An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust his administrative remedies and is generally barred from filing suit." *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 287 (D. Md. 2023). FEPA "incorporates the exhaustion procedures of Title VII" and similarly "requires a plaintiff to exhaust administrative remedies prior to filing suit in court." *Id.* at 287. Because Murdock's claims arise under both Title VII and FEPA, the claim-processing rule applies to Counts I, II, V, and VI included in this Partial Motion to Dismiss.

A claim is not timely unless it is filed with the EEOC within "three hundred (300) days if the aggrieved person presented the claim to a state deferral agency." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014). Here, because Maryland is a deferral state, Murdock "was required to file a charge with the EEOC within 300 days of [an] alleged unlawful employment practice." *Davis v. Balt. Hebrew Congregation*, 985 F. Supp. 2d 701, 713 (D. Md. 2013).

Where a plaintiff alleges multiple "discrete retaliatory or discriminatory act[s]" as opposed to a broader hostile work environment, each of those discrete acts is deemed to have "'occurred' on the day that it 'happened.'" *Spearman v. City of Annapolis*, Civ. No. JKB-21-1779, 2022 WL 316641, at *6 (D. Md. Feb. 1, 2022) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).[1] "Each discrete discriminatory act starts a new clock for filing charges alleging

[1] Murdock refers to his allegations being part of a "Continuing Action" extending up to the day before filing. (ECF No. 14 at 15). He does not argue a continuing violation theory, but the Court notes that any such theory "does not apply to discrete acts of retaliation or discrimination" but rather is appropriate where a plaintiff alleges a continuing hostile work environment claim, which Murdock does not do here. *See Spearman*, 2022 WL 316641, at *6.

that act." *Morgan*, 536 U.S. at 105. And, ultimately, "only incidents that took place within the timely filing period are actionable." *Id.* at 114. "All prior discrete discriminatory acts are untimely filed and no longer actionable." *Id.* The Court cannot consider claims based solely on those untimely acts but must "properly pare[] the case down to the only claims still viable." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004).

Here, the parties agree that Murdock filed his EEOC charge on December 6, 2025. (ECF No. 10-2; ECF No. 14 at 14.) The 300-day filing period therefore reaches back to February 9, 2025, and each alleged discriminatory act must have occurred on or after that date to be actionable. *See Spearman*, 2022 WL 316641, at *6. Murdock concedes that most of the alleged unlawful conduct in his Complaint, including his termination, "did not happen within the 300-day window." (ECF No. 14 at 14.) Murdock was fired on January 10, 2025, so he missed the filing deadline for that alleged retaliatory act by 30 days. (ECF No. 1 at ¶ 69.) And most of the other alleged acts of discrimination and retaliation in the Complaint predate Murdock's firing, so they are similarly time-barred. (*Id.* at ¶¶ 18–72.) Thus, these acts are time-barred, although they may serve as "background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

Murdock contends, however, that he also "allege[d] discriminatory and retaliatory conduct that happened after his termination." (ECF No. 14 at 14.) Specifically, Murdock cites Defendants' alleged post-firing efforts to spread information about his sexual misconduct investigation to other employers and to interfere with his attempts to gather evidence and interview witnesses. (*Id.* at 14–15.) Although the Complaint provides no dates, Murdock argues that the Court can reasonably infer that this conduct continued into the 300-day filing period. (*Id.* at 14.) Thus, according to Murdock, the Court may consider that "post-termination conduct" as "discrete acts of retaliation or discrimination within the 300-day period." (*Id.* at 15–16.) However, Murdock's Title VII and

FEPA claims–to the extent they are based only on such post-termination conduct—must be dismissed for failure to state a claim.

Murdock does not plead enough facts to state a plausible claim for discrimination or retaliation based on Defendants' alleged post-firing conduct. Murdock alleges in conclusory fashion that "JHU and JHHSC—large, influential, and well-resourced entities with a vested interest in protecting their reputations—took active steps to impede Dr. Murdock's ability to investigate and substantiate his legal claims." (ECF No. 1 at ¶ 76.) That is a bare conclusion that the Court cannot accept as true without factual enhancement. The Complaint continues: "Specifically, it appears that JHU and JHHSC discouraged, pressured, or otherwise interfered with potential witnesses who possessed knowledge of the discriminatory and retaliatory conduct alleged, as well as the OIE investigation, preventing or delaying those witnesses from cooperating with Dr. Murdock's counsel's investigation." (*Id.*) By its own terms, this allegation describes what "appears" to have happened, and the Complaint offers no factual detail to support its serious allegation of witness tampering and delay. The Court cannot accept this conclusory allegation, either.

The only non-conclusory post-firing allegation in the Complaint is that Murdock "was advised by physicians that the Defendants communicated with third parties about the OIE investigation and underlying allegations, and that he should 'assume everybody you talk to knows' about them." (ECF No. 1 at ¶ 74.) But this bare allegation does not say which Defendants communicated, to whom, or when and thus is devoid of necessary factual enhancement that might render it plausible. Nor, contrary to Murdock's argument, does this allegation allow the Court to reasonably infer that these communications occurred within the 300-day filing period, that is, more

than 30 days after Murdock's firing. (*See* ECF No. 14 at 15.) The alleged communications could just as easily have taken place during the investigation and before Murdock's termination.

Simply put, Murdock's allegations of unlawful conduct before February 9, 2025 are untimely, and his allegations of post-firing conduct lack the factual support needed to survive a motion to dismiss and are further not alleged to have occurred within the 300-day filing period. Counts I, II, V, and VI will be dismissed.

**B. Equitable tolling or estoppel cannot preserve Murdock's claims.**

Murdock argues that his potential ability to invoke equitable tolling or equitable estoppel, and thus preserve his time-barred claims, makes dismissal premature. (ECF No. 14 at 17–18.)[2] But nothing in the Complaint provides a factual basis for those equitable arguments.

"The failure to timely file an EEOC charge . . . does not deprive the district court of subject matter jurisdiction" over a plaintiff's time-barred claims. *Hentosh*, 767 F.3d at 417. So, the Court may consider whether those untimely claims are subject to "waiver, estoppel, and equitable tolling 'when equity so requires.'" *Morgan*, 536 U.S. at 121 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)). The Fourth Circuit has described the limited circumstances in which a court may hear claims that are otherwise time-barred under Title VII:

> Courts strictly adhere to the time limits in [Title VII] and rarely allow equitable tolling of limitations periods. There are, however, narrow circumstances which may result in the district court's setting aside the limitations. Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action; equitable estoppel applies where

[2] Murdock argues that the Court "cannot resolve equitable tolling and estoppel at the motion-to-dismiss stage" because those doctrines should be considered "at the summary-judgement stage." (ECF No. 14 at 17–18.) But courts in this district have resolved these doctrines at the motion-to-dismiss and similar stages when there is nothing in the Complaint to suggest that they apply. *See Wilcox v. Prince George's Cnty., Fire/EMS Dep't*, Civ. No. AW-07-2899, 2008 WL 11509687, at *6 n.10 (D. Md. Aug. 28, 2008) (finding, on a motion to dismiss, that "there is nothing [in the Complaint] to suggest" that equitable tolling applies); *see also Taylor v. Wells Fargo Bank*, Civ. No. PJM-21-1210, 2022 WL 180756, at *5 (D. Md. Jan. 20, 2022) (finding, on a motion for judgment on the pleadings, that the "allegations in the Complaint" reveal "no grounds" for equitable tolling of a Title VII claim).

> the defendant engages in intentional misconduct to cause a plaintiff to miss a filing deadline.

*Eaton v. Digital Equip. Corp.*, 16 F. App'x 95, 96 (4th Cir. 2001) (citations omitted). The Court readily concludes that neither doctrine applies here.

First, equitable estoppel does not apply because nothing in the Complaint suggests that Defendants' alleged acts caused Murdock to miss the filing deadline. Murdock alleges that JHU and JHHSC took "active steps" to impede his "counsel's investigation" of the alleged unlawful employment acts. (ECF No. 1 at ¶ 76.) Murdock does not allege what actions JHU and JHHSC specifically took to impede the investigation, and thus this allegation is not plausibly pled. The general interference alleged, moreover, has little bearing on Murdock's ability to file an EEOC charge, which requires only a brief written statement identifying the parties and generally describing the challenged conduct. *See* 29 C.F.R. § 1601.12(b).

Second, equitable tolling does not apply because nothing in the Complaint suggests that Defendants concealed the existence of Murdock's claims. Rather, the Complaint "clearly reveal[s]" that Murdock was aware of the facts supporting his Title VII and FEPA claims at the time of his termination. *Taylor*, 2022 WL 180756, at *5. The Complaint is rife with alleged discrimination and retaliation that Murdock knew about and could have included in a timely EEOC charge regardless of any roadblocks that Defendants allegedly put in his way. (*See* ECF No. 1 at ¶¶ 18–26 (describing how Murdock "immediately" encountered racial bias upon matching at JHU); *see also id.* at ¶ 42 (describing how one doctor told Murdock before he was fired that "JHU was attempting to push him out" for "racially motivated" reasons); *id.* at ¶ 51 (describing how Murdock met with JHU staff to "formally raise concerns about racially disparate treatment" in his program); *id.* at ¶¶ 71–72 (describing how Murdock had, at the time of his firing, access to JHU's procedures for sexual misconduct and reason to believe that his dismissal was retaliatory).)

In short, this is not a case where "affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam). On the record currently before the Court, Murdock had no legally cognizable reason that excuses the delay in filing his EEOC charge.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss the Complaint (ECF No. 10) will be granted. Counts I, II, V, and VI will be dismissed. Counts III and IV will remain. The Court will separately issue a proposed scheduling order for the case and schedule a teleconference, so Murdock's Motion to Commence Discovery and for Entry of a Scheduling Order (ECF No. 19) will be denied as moot. A separate Order follows.

DATED this 29 day of October, 2026.

BY THE COURT:

James K. Bredar

James K. Bredar
United States District Judge